

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 22, 2022

**BY ECF and EMAIL**

The Honorable Ronnie Abrams
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re:   *United States v. Billy Ortega*, 22 Cr. 91 (RA)

Dear Judge Abrams:

The Government respectfully submits this letter in opposition to defendant Billy Ortega's motion for pre-trial release in the above-captioned case, which his counsel submitted to the Court by email this morning. As explained in greater detail below, Ortega presents a danger to the community and is a substantial flight risk. The defendant was the leader of a deadly narcotics delivery service, which, in a single day, sold fentanyl-laced cocaine to three victims (the "Victims"), causing their deaths.. The defendant employed numerous couriers who delivered narcotics for him, including the other two defendants, and operated his business for a substantial period of time. Even after Ortega knew that his drugs killed the Victims in March 2021, he continued to operate his narcotics delivery service, selling drugs seven days a week every day until his arrest on February 1, 2022.

The evidence against Ortega--which includes highly incriminating messages and other information from his iCloud accounts, subpoena returns, location information, text messages with his couriers showing his operation of the conspiracy for years, including after he knew that the Victims died—is overwhelming. Ortega faces at least a 20-year mandatory minimum and is not safety valve eligible. The Indictment carries a presumption in favor of detention, and Ortega has not rebutted—indeed, in this case, cannot rebut—that presumption. He should be detained pending trial.

**I.   Background**

   **A.   The Charges Against Ortega**

On February 1, 2022, Ortega and co-defendants Kaylen Rainey and William Drayton were arrested pursuant to a criminal complaint (the "Complaint") charging them with narcotics conspiracy resulting in death, in violation of Title 21, United States Code, Section 846 and

841(b)(1)(C).[1] (Dkt. No. 1). On February 10, 2022, the grand jury sitting in this District returned indictment 22 Cr. 91 (RA) (the "Indictment") charging the defendants with the same charges contained in the Complaint. (Dkt. No. 12). The evidence in this matter will show the following:

### 1. Overdose Deaths of Victims Julia Ghahramani, Amanda Scher, and Russ Mtangi

On March 18, 2021, NYPD officers and emergency medical personnel were called, separately, to Julia Ghahramani's and Amanda Scher's Manhattan apartments and to a Manhattan hotel room where Ross Mtangi was staying. All three Victims were found unresponsive and pronounced dead on the scene. Responding officers found translucent black baggies containing a white powdery substance at all three locations. The white powdery substance in the recovered baggies and/or drug paraphernalia at the scene tested positive for the presence of fentanyl and cocaine. Consistent with those lab results, the Office of the Chief Medical Examiner ("ME") determined that each of the Victims died from acute intoxication of the combined effects of fentanyl and cocaine.

Law enforcement reviewed Scher's and Ghahramani's cellphones and on several occasions, including on the day before their deaths, they communicated via text with the user of the telephone number 646-421-5555 (the "5555 Drug Dispatcher Phone") that Phone sending someone to deliver drugs to them. (*See* Compl. ¶¶ 7(a), (e)).

Toll records show that this dispatcher phone called and texted Scher and Ghahramani after their drugs were delivered. One of the texts to Scher told her: "try not to do too much because it's really strong." In addition to texting the Victims after the drugs were delivered, the 5555 Drug Dispatcher Phone also made several calls to Scher and to Ghahramani but neither victim ever responded to the continued texts/calls from the dealer, likely because they had already died.

### 2. Billy Ortega is the Drug Dispatcher

Law enforcement executed search warrants on two iCloud accounts (the "Ortega iCloud Accounts"), which listed the 5555 Drug Dispatcher Phone as each iCloud account's two-factor authentication phone number.[2]

*The User of the Ortega iCloud Accounts is the Drug Dispatcher*

The Ortega iClouds Accounts contained backed up iMessages with Mtangi and Scher, using the telephone number 646-354-3122 (the "3122 Drug Dispatcher Phone"). That number was saved on Scher's cellphone in the same contact card as the 5555 Drug Dispatcher Phone. (Compl.

---

[1] Drayton is charged with participating in the conspiracy but not with causing the deaths Ortega and Rainey are charged with death-resulting.

[2] An iCloud is a cloud storage service that someone who has an Apple device like an iPhone can use to backup the contents of their iPhone. Two factor authentication means that whenever the user of that iCloud accessed it from a new device, a text message would be sent to the 5555 Drug Dispatcher Phone for verification purposes.

¶10(c)).  In addition, on one instance in January 2020, the Ortega iCloud Accounts show a text message from Scher to the 3122 Drug Dispatcher Phone.  One minute later, the Scher Cellphone received a text message from the 5555 Drug Dispatcher Phone that stated "Hey how you doing Amanda Is me Jason pls delete 646-354-3122 [/] You txt the Wrong number." (Compl. ¶ 10(c)(ii)).

*The User of the Ortega iCloud Accounts is Billy Ortega*

The Ortega iCloud Accounts also contained sufficient information to identify their user as defendant Billy Ortega, including a message in which a woman, later determined to have a child with Ortega, refers to the user of one of the Ortega iCloud Accounts as "Billy Ortega" who is behind on child support payments.  A credit report on Ortega indicated that at the time of that text message in 2021, Ortega owed approximately $65,000 in child support payments.

Bank records for Ortega's checking account at a particular bank ("Bank-1") show that the same email address that is the Apple ID for one of the Ortega iCloud Accounts is the associated email address for Ortega's bank accounts at Bank-1.  The bank account was accessed by a particular IP Address, which is subscribed to Ortega's girlfriend Hope Cooper at a residence in West Milford, New Jersey (the "West Milford Residence"), which is owned by Cooper.  There are also messages on the iCloud accounts about buying this residence.

*Ortega's utilized defendant Kaylen Rainey to deliver the fatal overdoses and also used defendant William Drayton as a courier*

The Complaint also detailed Ortega's utilization of defendant Rainey to deliver the fatal overdoses, including surveillance video and cell site data showing Rainey at all three of the Victims' Manhattan locations on the day before their deaths, corresponding to the times that Ortega on the 5555 Drug Dispatcher Phone told Victims Scher and Ghahramani that the courier would be delivering the drugs.  (*See* Compl. ¶¶ 6(f)-(g),(k); 7(a)-(b); 12).  In addition, the Complaint explains Ortega utilizing Drayton to deliver narcotics for him, including to Victims Scher and Ghahramani on other occasions.  (*See* Compl. ¶¶ 13-14).

*Ortega's Arrest*

On February 1, 2022, Ortega was arrested outside of the West Milford Residence.  Agents then executed a search warrant where law enforcement found numerous cellphones scattered around the property, large collections of luxury jewelry (including a Rolex watch), luxury clothing, and an apparent "go bag" containing approximately $8,000 in cash, jewelry, Ortega's passport, social security card, and New York State Driver License.  A photograph of this bag is below:



### 3. The Government's Ongoing Investigation After the Arrests

The Government's investigation into other members of Ortega's delivery service remains ongoing. In connection with this ongoing investigation, the Government has obtained access to certain electronic devices and is in the process of obtaining access to others seized from defendants Ortega, Rainey, and Drayton. One such cellphone seized from defendant Rainey, for example, shows numerous text and WhatsApp messages between Rainey's phone and Ortega who is using multiple cellphones, including the 5555 Drug Dispatcher Phone (saved in Rainey's phone as "Billz" and which has a photograph of Ortega and Hope Cooper associated with that number). This text exchange and others shows that Ortega was running the drug delivery service for years, going back at least until 2019, and continuing until his arrest. In addition, the text messages between Rainey and the 5555 Drug Dispatcher Phone contain numerous inculpatory messages in which Ortega was directing Rainey to deliver drugs to the three Victims in this case, and then texts strongly suggesting Ortega knew that the Victims had died.

On March 17, 2021 – the day that Ortega directed Rainey to deliver the drugs that killed the three Victims – Ortega, using the 5555 Drug Dispatcher Phone, texts Rainey to deliver narcotics that day ("Hey buddy you wanna take over today"). Ortega then tells Rainey the first address – Victim Julia Ghahramani's address – and the amount of money he was to collect ("200$"). Later that day, Ortega sends the addresses for the hotel at which Victim Ross Mtangi was staying and Scher's apartment address and the money Rainey was supposed to collect. The next day, March 18, 2021 – the day the three Victims' bodies were found – Rainey sends screenshots of home drug testing kits to Ortega, which he then says he "passed" to "ma," strongly indicating that Ortega knew that the Victims died and wished to test his cocaine. Ortega then tells Rainey to get his cellphone charger from Ortega's brother "Kevin," after which Ortega stops texting Rainey from the 5555 Drug Dispatcher Phone, and instead begins using a different phone, further showing Ortega's consciousness of guilt.

## II. Applicable Law

The Government ultimately bears the burden of showing by a preponderance of the evidence that the defendant poses a risk of flight or, by clear and convincing evidence, that the defendant poses a danger to the community, and that no condition or combination of conditions can address those risks. *See* 18 U.S.C. § 3142(f); *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007); *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). However, when, as in this case, a defendant is charged with a controlled substance offense with a maximum term of imprisonment that is greater than ten years, as is the case in Count One, "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(A).(B).

In assessing a defendant's risk of flight and the danger to the community presented by release, Congress directed courts to consider several factors: (1) the "history and characteristics of the person" including "family ties, employment, financial resources, length of residence in the community, [and] community ties"; (2) "the nature and circumstances of the offense charged"; (3) "the weight of the evidence against the person"; and (4) the "nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). Title 18, United States Code, Section 3142(e) provides that if a judicial officer concludes after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the defendant shall be detained pending trial. 18 U.S.C. § 3142(e).

"Because the 'rules concerning admissibility of evidence in criminal trials do not apply' to bail hearings, *see* 18 U.S.C. § 3142(f)(2)(B), the parties may proceed by way of proffer, *United States v. LaFontaine*, 210 F.3d 125, 130-31 (2d Cir. 2000). As such, courts often base detention decisions on hearsay evidence and on factual material proffered by the Government. *United States v. Boustani*, 356 F. Supp. 3d 246, 251 (E.D.N.Y. 2019), *aff'd*, No. 19-344, 2019 WL 2070656 (2d Cir. Mar. 7, 2019).

## III. Discussion

The defendant cannot overcome the presumption of detention. Even if he could, there are no conditions that could assure the community's safety or that the defendant would appear in this Court in light of, among other things, the seriousness of the offense; the demonstrable harm caused by his narcotics trafficking, which has saturated several neighborhoods in lower Manhattan and around New York City with dangerous narcotics, including fentanyl-laced cocaine, and caused the death of at least the three Victims charged in the Indictment; the overwhelming nature of the evidence against him; the fact that he continued to sell drugs for almost a year after he knew that the Victims died; and the penalties he faces.

### A. The Defendant Poses a Danger to the Community

The defendant was a major narcotics supplier, operating a deadly delivery service that delivered fentanyl-laced cocaine, at a time when fentanyl overdoses have risen to catastrophic levels in this city and around the country. Ortega controlled the delivery service for a substantial

period of time, going back at least to 2019, and caused the deaths of at least three victims, as well as other overdose deaths about which the Government is currently investigating.

The danger posed by Ortega in the community is further exacerbated by the fact that the Victims' deaths had absolutely no deterrent effect on Ortega's narcotics trafficking operation whatsoever. As shown above, the evidence—including the calls and texts from Ortega to the victims that went unanswered, and his text messages with Rainey—strongly indicate that Ortega knew the Victims had overdosed from his drugs, but then he continued his delivery service unabated. This Court should have no confidence that Ortega will not continue his service if he is bailed.

In short, Ortega's conduct is egregious, spanned a substantial period of time, and was extremely dangerous. The defendant's conduct reflects a troubling disregard for the risk of harm or death to others, and the Court should detain him to protect the community.

### B. The Defendant Presents a Substantial Risk of Flight

The seriousness of the offense is also reflected in the seriousness of the penalties now facing Ortega. The charges contained in the Indictment carry a mandatory minimum 20-year because of the deaths of the Victims. In addition, the Government's ongoing investigation is likely to reveal that Ortega sold cocaine over a substantial period of time, warranting additional mandatory minimum exposure. Accordingly, in light of the very substantial penalty, Ortega has a strong incentive to flee.

Furthermore, as described above, the evidence against the defendant is overwhelming, compounding the flight risk. The evidence includes, among other things, damning messages and other information from the Ortega iCloud Accounts, text messages, surveillance, and location information, among others. The strength of the proof militates strongly in support of detention.

Though the defendant does not have substantial criminal history, his involvement in this conspiracy lasted for years. The Indictment charges from at least 2020 through at least 2021, but, as noted, the Government's investigation revealed that Ortega has operated this service at least since 2019 through his arrest. In addition, the defendant's home contained a "go bag" of thousands of dollars, jewelry, and identifying documents, indicating that the defendant contemplated fleeing if law enforcement got too close, and showing he has the means and ability to flee.

Finally, the Court should also reject Ortega's reliance on the character letters submitted by family and friends. Those same individuals did not prevent Ortega from selling large quantities of narcotics, including fentanyl-laced cocaine, for a substantial period of time. In short, Ortega has not demonstrated that he will not go right back to narcotics trafficking if he is released. Indeed, now that Ortega knows that he is subject to a lengthy sentence with a total of a 20-year mandatory minimum, he has a powerful incentive to flee.

### C.  COVID-19 and Ortega's Conditions of Confinement Do Not Justify Bail

The Court should reject Ortega's unverified complaints about the conditions of confinement at the Metropolitan Detention Center ("MDC").  Even if the Court were to consider these conditions—which are not relevant under the Bail Reform Act—Ortega has not presented any verifiable information that he suffers from any medical condition that would pose an elevated risk of COVID-19.  Indeed, his submission is silent as to his vaccination status, which radically ameliorates the risk of severe illness from COVID-19.  *See, e.g.*, *United States v. Kosic*, 18 Cr. 30 (PAC), 2021 WL 1026498, at *2 (S.D.N.Y. Mar. 17, 2021) (recognizing that vaccination substantially mitigates an inmate's potential risk from COVID-19).

## IV.  Conclusion

There are no conditions of release that could reasonably assure the defendant's continued appearance in this case or ensure the safety of the community, as is required for pre-trial release, and the defendant has not rebutted the presumption in favor of detention.

Rather, this matter presents a clear case for pre-trial detention.  The Government respectfully requests that the Court order the defendant's continued detention pending trial.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:  *Michael R Herman*
Micah F. Fergenson / Michael R. Herman
Assistant United States Attorneys
(212) 637-2190 / -2221