

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 17, 2023

**BY ECF**
Hon. Ronnie Abrams
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

    Re:    *United States v. Billy Ortega*, S4 22 Cr. 91 (RA)

Dear Judge Abrams:

    The Government respectfully writes in response to the defendant's letter regarding the testimony of proposed defense witness Jonathan DeLaura, a Metropolitan Detention Center ("MDC") inmate. (Dkt. 95). The Court's ruling at the final pretrial conference excluding the testimony of DeLaura was correct. (Jan. 25, 2023 Tr. at 24-25). The defendant has presented no grounds to justify reconsideration during oral argument at the conference or in his letter. For the reasons set forth below, at oral argument, and in the Government's opposition to the defendant's motions *in limine* (Dkt. 90 ("Gov't Opp'n")), the Court should exclude the proposed testimony of DeLaura.

    First, the defendant's assertion that DeLaura's proposed testimony is admissible under Rule 404(b) is meritless. Under Rule 404(b), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." The defendant's theory of admission is expressly prohibited by Rule 404(b). Turning first to alleged prostitution, the only commonality between the defense's theory of the three overdose deaths—that CW-1 disregarded Ortega's instruction about drug sourcing—and the purported prostitution in the MDC is that both of these purported bad acts go to CW-1's character. Indeed, during oral argument at the conference, defense counsel said so explicitly: "it's probative of [CW-1]'s character." (Jan. 13, 2022 Tr. at 25; *see also id.* ("It is [CW-1's] sense of being.")). So too with the supposed fentanyl trafficking in the MDC. Indeed, the defendant asserts that DeLaura's testimony about this alleged conduct should be admitted to show the "full picture of [CW-1] the person." (Dkt. 95, at 3).[1] This sort of bad character, propensity evidence is exactly what Rule 404(b) prohibits.

---

[1] The defendant asserts that "the government should not be allowed to vouch for the testimony of" CW-1. In this case, like all other cases, the Government will not "vouch" for any of its witnesses,

Second, the defendant appears to argue that DeLaura's testimony should be admitted to prove CW-1's bias, noting that Rule 608 does not bar the use of extrinsic evidence to show bias.[2] (*See* Dkt. 95). But the defendant nowhere explains how *DeLaura's testimony* is probative of CW-1's bias. The defendant states only that "[b]y virtue of his cooperation agreement [CW-1] has a bias in favor of the government." Needless to say, the fact of CW-1's cooperation will be elicited at trial—and the defense may engage in cross-examination and make its arguments arising from that fact—without the need for any testimony from DeLaura. (*See* Gov't Opp'n 4-5).

In other words, DeLaura's testimony should be excluded under Rule 403, as the testimony has little to no probative value, is highly inflammatory and prejudicial, and would be a confusing sideshow that would devolve into a trial within a trial. The Government would be entitled to cross examine DeLaura regarding, among other things, his prior acts of child molestation arising from deception (separate from the charges currently pending against him in this district), and his bias against the Government arising from his now-vacated 420-month sentence and once-again pending charges for child sex offenses in this district. (*See* Dkt. 90 (Gov't Opp'n), at 2 n.1). Moreover, the Government may be required to call rebuttal witnesses from the MDC to show that DeLaura's allegations are false.[3]

The fact that the defendant can cross examine CW-1 on whether CW-1 committed additional crimes after entering a cooperation agreement, as discussed at the conference (Jan. 25, 2023 Tr. at 30-32), further counsels against admitting the testimony of DeLaura.[4] Indeed, the above approach—permitting reasonable cross examination of a cooperating witness but precluding witnesses like DeLaura—is supported by precedent. For example, the defense in *United States v. Georgiou*, 777 F.3d 125 (3d Cir. 2015), cross-examined a cooperating government witness about post-cooperation acts of fraud. The witness denied the allegation, and the court barred further

---

as such vouching is impermissible. *See United States v. Carr*, 424 F.3d 213, 227 (2d Cir. 2005) ("the prosecution may not 'vouch' for the credibility of its witnesses").

[2] While the defendant references other purposes not barred by Rule 608, the only one he argues has any application to this case is bias. (*See* Dkt 95, at 3-4). Of course, Rule 608(b) expressly bars DeLaura's proposed testimony if offered to attack CW-1's character for truthfulness. Fed. R. Evid. 608(b) ("extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness.").

[3] The defendant states in his letter that "the government has never interviewed DeLaura" despite receiving his letter. (Dkt. 95, at 2). The Government previously asked DeLaura's counsel if DeLaura would participate in an interview with the Government, and DeLaura's counsel declined on DeLaura's behalf. The Government understands that, in light of DeLaura's letter regarding his decision to seek to testify in this trial against the advice of his counsel, DeLaura's counsel intends to withdraw from his representation of DeLaura.

[4] This Court should not permit inflammatory cross examination involving CW-1's medical condition. While it is permissible for the defense to ask CW-1 whether he committed additional crimes after signing his cooperation agreement—and to specifically ask if he engaged in prostitution or drug trafficking at the MDC—this Court should preclude any reference to CW-1's medical condition. (*See* Gov't Opp'n 3-4). The defendant has cited no authority suggesting such cross examination is permissible, despite this Court's invitation to do so.

questioning on the matter. The defense sought to introduce testimony of witnesses to prove the post-cooperation fraud. The trial court would not permit this, either, and the court's decision was affirmed on appeal as within the court's discretion under Rules 608(b) and 403. This did not violate the defendant's confrontation rights, either, "as the record reflects that the District Court allowed Appellant to cross-examine [the cooperating witness] about his alleged criminal acts, and limited further questioning only after [the cooperating witness] denied engaging in misconduct." *Id.* at 145. In short, "[b]ecause the jury was in possession of sufficient information to make a discriminating appraisal of the [cooperating] witness's possible motives for testifying falsely in favor of the Government, the District Court did not abuse its discretion in excluding certain extrinsic evidence and limiting the cross-examination." *Id.* (internal quotation marks and alterations omitted). This Court should adopt the same approach here.

For the reasons set forth above, the Court should preclude unreasonable and inflammatory cross-examination of CW-1 and exclude the testimony of DeLaura.

                            Respectfully submitted,

                            DAMIAN WILLIAMS
                            United States Attorney

by: /s/ _____
     Micah F. Fergenson
     Michael R. Herman
     Robert B. Sobelman
     Assistant United States Attorneys
     (212) 637-2190 / - 2221 / -2616