

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 22, 2023

**BY ECF**
Hon. Ronnie Abrams
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

    Re:    *United States v. Billy Ortega*, S4 22 Cr. 91 (RA)

Dear Judge Abrams:

    The Government respectfully submits this letter to request that the Court admit CW-1's testimony regarding threats made by the defendant to CW-1 while both were incarcerated at the MDC.

    The Government expects that CW-1 will testify that, since their arrests on February 1, 2022, the defendant has spoken to CW-1 on two occasions.[1]  The first occurred when CW-1 and the defendant were on their way to a court appearance in this case and were in the elevator with several other inmates.  The defendant confronted CW-1, telling CW-1, in sum and substance, that his lawyer had said CW-1 was talking, and if CW-1 kept talking, the defendant would not be able to protect CW-1.  The second threat took place on the bus back to the Metropolitan Detention Center ("MDC") after a court proceeding in this case.  After the bus arrived at the MDC, while CW-1, the defendant, and several other inmates were waiting to exit the bus, the defendant turned and shouted to CW-1, in sum and substance, that he should have kept his mouth shut, in an apparent attempt to out CW-1 as a cooperator.  Indeed, another inmate passenger then pressed CW-1 on whether he was cooperating with the Government, which CW-1 denied, for his safety.

    The foregoing testimony about the defendant's attempts to intimidate a Government cooperating witness is admissible.  These events are highly probative of the defendant's own consciousness of guilt and his attempts to frustrate the legal process to avoid conviction. *See United States v. Sakoc*, 2014 WL 7336079, at *6 (D. Vt. Dec. 22, 2014) (holding that "[e]vidence tending to suggest [the defendant] engaged in witness tampering is highly relevant to his state of mind,"

---

[1] As the Court is aware, CW-1 and the defendant are detained at the MDC.  While CW-1 is not aware of this fact, a separation order has been in place between these two inmates, and the threatening conduct occurred on the two occasions when the separation order was not effectuated.

"the jail tapes' probative value is not outweighed by any potential prejudice," and any arguments to the contrary "go to weight rather than admissibility."). That probative value is not substantially outweighed by a risk of unfair prejudice. In particular, to the extent there is a risk that the jury would conclude the defendant has been incarcerated with CW-1 in the time period since their arrests, that risk does not create any risk of unfair prejudice that substantially outweighs the probative value of the defendant's threats to CW-1 under Rule 403. As an initial matter, the threats are no more sensational than the crimes for which the defendant is being tried—trafficking dangerous drugs that killed three people, and carrying firearms in furtherance of his drug trafficking. Second, the Government will not elicit details about the timing of the two threats, other than to establish that CW-1 was in fact proffering and cooperating with the Government at the time of the threats. As a result, it will not be apparent that the defendant is currently detained while he stands trial. Nor will the Government, through its direct examination, seek to emphasize that *the defendant* is in custody.[2] The Government will merely seek to elicit testimony that accurately conveys the circumstances in which the defendant's statements were made, and thereby allow accurate inferences to be drawn from the defendant's own words. To do so, the Government must elicit that, at the time the defendant's threats were made, CW-1 was being held in jail, and that the defendant's threats were made under circumstances where other inmates at the MDC (where CW-1 is housed) would learn about CW-1's cooperation or potential cooperation.

To the extent a juror might conclude that the defendant was incarcerated for at least some period following his arrest, that risk does not call for preclusion of this highly material testimony. Admissible evidence does not otherwise become inadmissible merely because it was generated while the defendant was incarcerated. *See, e.g.*, *United States v. Guang Ju Lin*, 505 F. App'x 10, 13-14 (2d Cir. 2012) (affirming admission of calls defendant made from prison to co-conspirator); *United States v. Faison*, 393 F. App'x 754, 759 (2d Cir. 2010) (evidence that co-conspirators were "roommates in prison" admissible to "explain[] the sequence of events leading to the conspiracy"); *United States v. Rosa*, 11 F.3d 315, 334 (2d Cir. 1993) (evidence of prior relationship admissible to "inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, [and] to explain the mutual trust that existed between coconspirators."); *United States v. Price*, 2009 WL 973370, *1 (E.D.N.Y. 2009) (periods of prior incarceration admissible because the evidence was inextricably intertwined with the evidence regarding the charged offense and because it was necessary to complete the story of the crime on trial).

And to the extent there is a risk of unfair prejudice, the Court can cure any such potential prejudice by issuing a limiting instruction. *See Zafiro v. United States*, 506 U.S. 534, 540–41 (1993) ("'[J]uries are presumed to follow their instructions.'" (quoting Richardson v. Marsh, 481 U.S. 200, 211 (1987))); *Spencer v. Texas*, 385 U.S. 554, 562 (1967) ("[T]he jury is expected to follow instructions in limiting . . . evidence to its proper function."); *accord United States v. Stewart*, 433 F.3d 273, 307 (2d Cir. 2006) (noting the "well-settled proposition" that jurors are presumed to follow limiting instructions). Courts in this district regularly admit similar evidence in the analogous situation of admitting an incarcerated trial defendant's jail calls. For example, in *United States v. Mack*, Judge Engelmayer provided a limiting instruction upon the admission of

---

[2] Of course, the fact that CW-1 has been in custody will be elicited without regard to testimony about the defendant's threats.

the trial defendant's jail calls in order to explain that the jury should only consider the fact of incarceration for "context to explain the circumstances under which the calls came about."[3] *United States v. Mack et al.,* 18 Cr. 834 (PAE).  So, too, here with the defendant's statements to CW-1.

   For the reasons set forth above, the Court should admit CW-1's testimony about the defendant's attempts to threaten and intimidate CW-1 while CW-1 was incarcerated.


       Respectfully submitted,

       DAMIAN WILLIAMS
       United States Attorney


     by: /s/_____
       Micah F. Fergenson
       Michael R. Herman
       Robert B. Sobelman
       Assistant United States Attorneys
       (212) 637-2190 / - 2221 / -2616

---

[3] Judge Engelmayer stated in full: "Ladies and gentlemen, I am going to give you an instruction that you've heard before in connection with earlier evidence.  Evidence of Mr. Mack's presence in jail is being received solely to explain his whereabouts at the time of these calls. You are not to consider that evidence for any other purpose. Specifically, you are not to consider that Mr. Mack was incarcerated in your deliberations. This is simply context to explain the circumstances under which the calls came about." *United States v. Mack et al.,* 18 Cr. 834 (PAE).