UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
UNITED STATES OF AMERICA

                                                        **MEMORANDUM IN SUPPORT OF MOTION**
          -against-                                       **IND# 22-CR-091 (RA)**

**BILLY ORTEGA,**

                                       Defendant.
-------------------------------------------------------------------X

Your Honor,

**PRELIMINARY STATEMENT**

Defendant Billy Ortega submits this Motion pursuant to Federal Rules of Criminal Procedure Rule 29 and 33, on the schedule set by the Court on January 30, 2023 as to the Rule 29 motion and pursuant to the time limit set in Rule 33 as to the Rule 33 motion.

This motion includes requests:

1. That a Judgement of Acquittal be entered pursuant to Fed R. Crim. Pro Rule 29 as to:
   a. Special Questions a and b of Count One
   b. Special Questions c, d, e, f, g, and h of Count One
   c. Count Two
   d. Count Three
   e. Count Four
   f. Count Five
2. That a new trial be granted pursuant to Fed R. Crim. Pro Rule 33.

**FACTUAL BACKGROUND AND PROCEDURAL POSTURE**

Defendant Billy Ortega was tried before the Court on a five count indictment alleging Narcotics Conspiracy Resulting in Death, Narcotics Distribution Resulting in Death as to Julia Ghahramani, Narcotics Distribution Resulting in Death as to Amanda Scher, Narcotics Distribution Resulting in Death as to Ross Mtangi, and Use and Possession of a Firearm in Relation to Narcotics Conspiracy. Jury selection commenced on January 18, 2023. Trial commenced on January 19, 2023 and concluded with a conviction on all counts on January 30, 2023.

After the verdict was read defense counsel made an oral request to have the full 14 days allowed by Rule 29 to submit a written submission. Defense counsel did not make a similar request regarding a Rule 33 motion. However, Rule 33(b)(2) states, in relevant part, that "any motion for

a new trial grounded on any reason other than newly discovered evidence must be filed withing 14 days after the verdict or finding of guilty." Therefore the Rule 33 motion is timely and proper.

### I.   MOTION FOR A JUDGEMENT OF ACQUITTAL

Federal Rule of Criminal Procedure 29(c)(1) states that "[a] defendant may move for a judgement of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." While Rule 29(c)(3) states that a defendant need not have made a motion for a judgement of acquittal prior to the Court submitting the case to the jury such a motion was made.

As stated in <u>United States v. Arena</u>, 918 F.Supp. 561 (N.D.N.Y. 1996) the Court, in considering a motion under Rule 29, "must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt…. [I]f there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt, the motion must be granted." (<u>Id</u>. at 565-66).

#### A. SPECIAL QUESTIONS A AND B OF COUNT ONE

Special Questions a and b of Count One related to the weight of the drugs allegedly involved in the conspiracy. Question a asked if the amount was more than 5 kilograms of cocaine. Question b asked, if the Jury made a finding of "no" as to question a, if it was more than 500 grams of cocaine. There was not sufficient evidence, proof beyond a reasonable doubt, on either point.

The only evidence related to weight came from an analyst who made conclusory statements regarding references to "will" and dollar amounts. This was based on a totally unsupported conclusion that every mention of $100 related to "will" corresponded to 1 gram of cocaine. No drugs were recovered from the home of Billy Ortega, from the apartment of his mother, or from any location tied to Mr. Ortega. No individual who investigated or was part of the conspiracy testified as to what weights of drugs were actually moved or possessed. There was video of a brick of a powdery substance alleged to be cocaine, but there is nothing indicating the weight of that brick or that it contained cocaine. There is nothing in the record, other than bare speculation, to support this conclusion, let alone proof beyond a reasonable doubt. No reasonable mind could have found that the government proved, beyond a reasonable doubt, that the weight of the cocaine involved in the conspiracy was 5 kilograms or more, nor that it was 500 grams or more. Therefore a judgement of acquittal should be entered as to these two questions.

#### B. SPECIAL QUESTIONS C, D, E, F, G, AND H OF COUNT ONE

Likewise under Rule 29 an acquittal should be entered as to Special Questions c, d, e, f, g, and h, dealing with the distributions to and death of Julia Ghahramani, Amanda Scher, and Ross Mtangi.

The first issue, the first matter where the Government failed to meet their burden, is regarding the cause of death. The cause of death was determined by Dr. Stacey Hail, a medical

toxicologist with no expertise in forensic pathology who did not perform an autopsy on the deceased, examine the deceased, respond to the scene, perform any testing, or do anything but review the work of other people.

It should be noted that Dr. Hail stated that one of the symptoms/causes of death in a stimulant overdose is a so called "excited delirium," which is not a legitimate diagnosis. According to the Brookings Institution[1] "excited delirium" does not appear in the Diagnostic and Statistical Manual of Mental Disorders or the International Classifications of Diseases, nor is it recognized by the World Health Organization (WHO), American Psychiatric Association (APA), American Medical Association (AMA), or American Academy of Emergency Medicine (AAEM). According to Brookings, in a 2020 article, excited delirium is "a misappropriation of medical terminology[.]"

Further Dr. Hail's testimony contradicted her conclusions. Dr. Hail testified, in no uncertain terms, that the substances in the blood were not the only factor in the decision, that you need to look at what happened before someone died, specifically including their behavior, to make a determination. Dr. Hail did not observe these individuals before their death, nor did she speak to anyone who had, or read any kind of account or report of their behavior when they died.

Beyond this there was no evidence that there was a mixture of fentanyl and cocaine in the bags. The Government's theory of the case was that the cocaine that was distributed or caused to be distributed by Billy Ortega was mixed, or "cut" with fentanyl, *not* that he sold fentanyl by itself. However the lab tests show that, with one exception, there are bags that tested positive for fentanyl residue and bags that tested positive for cocaine residue, not both. The mixtures were, with one exception, on the straw. The only exception was a bag that weighed 0.033 grams, however the margin of error on that bag was 0.030 grams. A measurement with a margin of error of more than 90% is, to be frank, completely meaningless.

Beyond the factual issues there is the issue of the legal elements, specifically issues based upon United States v. Keller, 916 F.2d. 628 (1990). In Keller Count 3 of the indictment charged "[t]hat, on or about the 11th day of July, 1988, in the Northern District of Georgia, the defendant, RILEY HARRINGTON KELLER, III a/k/a "Buddy" and MILLARD LEE SMITH, JR. a/k/a "Lee Smith", did combine, conspire, agree and have a tacit understanding with one another that they would commit an offense against the laws of the United States." "On the conspiracy charges the trial court initially instructed the jury that "it is not necessary for the government to prove that *all the people named in the indictment* were members of the scheme ... what the evidence must show beyond a reasonable doubt is that *two people, some two people* in some way or manner came to a mutual understanding."

This was held to have been an amendment to the indictment as "the instructions allowed the jury to convict the defendant on grounds not alleged in the indictment, thereby modifying an essential element of the offense charges and broadening the possible bases for conviction." The distribution charged in all counts in no way indicates that the distribution was done as part of or in

---

[1] How "excited delirium" is misused to justify police brutality, Joshua Budhu, Meabh O'Hare, and Altaf Saadi, https://www.brookings.edu/blog/how-we-rise/2020/08/10/how-excited-delirium-is-misused-to-justify-police-brutality/. All three authors are neurologists at Massachusetts General Hospital, one of the top ranked hospitals in the county.

furtherance of the conspiracy, nor did it in any way indicate any other individual besides Billy Ortega distributed narcotics. Cf. United States v. Sadler, 24 F.4th 515 (6th Cir., 2022), in which the language in the indictment, 16-20414, related to resulting in death read "[a]s a result of the acts committed by [defendants], and acts committed by other conspirators reasonably foreseeable to them, in furtherance of the conspiracy charged in this Count of the Eighth Superseding Indictment, death and serious bodily injury did result from the use of a controlled substance[.]" Such language is absent here.

At the appellate level the Circuit Court stated that "doctrine holds that a member of a conspiracy is liable for 'substantive offense[s]' committed by his co-conspirators, even if he did not participate in them, as long as: (1) the offenses are 'done in furtherance of the conspiracy,' (2) they 'fall within the scope of the unlawful project,' and (3) they are reasonably foreseeable 'consequence[s] of the unlawful agreement.' " *United States v. Hamm*, 952 F.3d 728, 744 (6th Cir. 2020) (quoting *Pinkerton*, 328 U.S. at 647–48, 66 S.Ct. 1180)." United States v. Sadler, 24 F.4th 515, 545 (6th Cir.), cert. denied sub nom. Tempo v. United States, 214 L. Ed. 2d 58, 143 S. Ct. 169 (2022). Absent any language to that effect the proof at trial constituted both a variance and an amendment to the indictment requiring that a judgement of acquittal be entered as to Special Questions c, d, e, f, g, and h of Count One.

### C.  COUNT TWO

Issues related to Count Two have been discussed with relation to questions c and d of Count One.

### D.  COUNT THREE

Issues related to Count Three have been discussed with relation to questions e and f of Count One.

### E.  COUNT FOUR

Issues related to Count Four have been discussed with relation to questions g and h of Count One.

### F.  COUNT FIVE

With regards to Count Five the evidence was wholly insufficient. The operative phrase in the charge and the indictment is that the possession must be related to and in furtherance of the narcotics conspiracy. The evidence on this point is sorely lacking. We have one actual picture of an actual firearm in this case: a firearm possessed by Kaylen Rainey that he referred to, repeatedly, as his gun. There is no evidence any possession was related in any way to the narcotics conspiracy.

The texts about guns in the group chat cannot be taken seriously as actual declaration. That conversation begins with a statement, allegedly from Billy Oretga in the early parts of the pandemic, that there were too many people in his house and he would have to call the marshals,

before telling individuals to "grip up," before one individual responds that he is going to get an Uzi, an automatic submachinegun. These statements are obviously a joke.

## II.   MOTION FOR A NEW TRIAL

Additionally Defendant Billy Ortega moves for a new trial under Rule 33. As stated in United States v. Felice, 481 F.Supp. 79, 90 (N.D. Ohio 1978) when a Rule 33 motion is filed the trial judge sits "as the 13th juror." A new trial should be granted both on the basis of the new evidence discovered and the basis of (a) the lack of sufficient evidence at trial, (b) the prosecutions statements during summation, and (c) the denial of the ability to call William DeLaura as a witness. While counsel did not specifically request a Rule 33 motion Rule 33(b)(2) states that a motion for a new trial "grounded on any other reason than newly discovered evidence must be filed within 14 days after the verdict."

### A. NEW EVIDENCE

The first basis for a new trial is evidence that was just discovered by the defense in the form of tweets sent by the "@Qing__k" twitter account, an account that Kaylen Rainey admitted on the stand was his. These tweets are as follows:

a tweet from January 26, 2021 stating "I just be lying lmao[2]" followed by an emoji;

a tweet from December 24, 2021 stating "I lie when necessary;"

a tweet from December 25, 2021 stating "LMFAO girl I'm a liar[3];"

a tweet from December 31, 2011 stating "I'm such a liar but hey I be wanting shit to myself. Can't spoil the secret" followed by a smiley face;

and a tweet from June 23, 2011 stating "I'm a liar too shit so we even."

These tweets show that Kaylen Rainey has, repeatedly stated in no uncertain terms that he is a liar, most specifically in the tweet from December 24, 2021, shortly before Rainey's arrest, where Kaylen Rainey stated specifically that he "lie[s] when necessary." Such evidence calls his credibility into question in a manner that requires a new trial in the interests of justice.

### B. OTHER GROUNDS

Additionally Billy Ortega is entitled to a new trial on grounds other than new evidence. The first reason for this is that, sitting as a "13th juror," the evidence was insufficient. As these flaws were discussed above there is no need to reiterate them here.

The second reason is the comments made by the Government during their closing statements. The Government stated "you don't have to find that it was the defendant's drugs" and

---

[2] LMAO means "laughing my ass off"
[3] LMFAO means "laughing my f**king ass off"

5

"it doesn't matter where the fentanyl came from." These statements were both incorrect as a matter of law, it does matter in terms of the fact that the fentanyl must have been distributed or caused to be distributed by the defendant. Defense counsel objected to these statements and requested a mistrial or, at the very least, a limiting instruction. These statements had the impact of telling the jury that an element of the crime, that the drugs distributed or caused to be distributed by the defendant were the cause of death, did not need to be proved. A limiting instruction was given but was not sufficient. A mistrial should have been granted, and at this stage a new trial should be granted as a result.

The third reason for a new trial to be granted under rule 33 is the denial of the testimony of William DeLaura. DeLaura's testimony would have directly contradicted that of Kaylen Rainey, showing conclusively that Rainey was not a credible witness. In the absence of Rainey's testimony there is not enough evidence to convict Billy Ortega on any count, but especially on Count Five. As a result a new trial is required in the interests of justice for this reason as well.

**CONCLUSION**

Based upon the foregoing, it is respectfully submitted that relief requested in the Preliminary Statement be granted, as well as any just and further relief this court deems necessary.

Dated: 2/13/2023

Respectfully Submitted,

*Dawn M. Florio*

Dawn M. Florio Law Firm P.L.L.C.
By DAWN M. FLORIO
Attorney for Defendant
Billy Ortega
488 Madison Ave, 20th
New York, NY 10022
(212) 939-9539

To: Clerk of the District Court
    Southern District of New York
    AUSA Micah Fergenson
    AUSA Michael Herman
    AUSA Robert Sobelman